JOHN MADEJ, Respondent, *v.* DIRECTOR-GENERAL OF RAILROADS, Appellant.

*Trial — verdict — motion to set aside — evidence.*

Appeal from a judgment of the Supreme Court in favor of the plaintiff, entered in the Schenectady county clerk's office February 19, 1920, upon the verdict of a jury for $10,000, and also from an order entered February 18, 1920, denying defendant's motion to set aside the verdict and for a new trial.

Judgment and order unanimously affirmed, with costs, on the opinion of Whitmyer, J., at Trial Term.

The following is the opinion of Whitmyer, J.:

WHITMYER, J.: The trial of the above-entitled action resulted in a verdict for $10,000 in favor of plaintiff, and defendant has moved to set it aside on the several grounds specified in section 999 of the Code. The particular grounds are that the verdict was the result of passion or prejudice and was excessive. Plaintiff was shot on March 13, 1918, at about eight P. M., by a policeman or detective in defendant's employ. The occurrence took place at Powell's crossing, several miles westerly from the city of Schenectady. Defendant maintains a storage yard at this place. On said night, cars loaded with grain, coal and other commodities were stationed on each side, namely, easterly and westerly, of the crossing. Plaintiff lived at a point northeasterly from the crossing, namely, about 500 feet northerly from tower 9, which was a short distance easterly. It had been his custom to use a path or a way, leading from his house to the railroad at the tower.

He had used the crossing only once or twice before. He started for it that night. He was accompanied by his brother and his brother-in-law, who lived on the second floor of the house in which he lived. They took one or more sacks with them. They all testified that they intended to go to Buhrmaster's by way of the crossing, to purchase middlings for plaintiff's cow. There was some testimony to the effect that they said, after the shooting, that they were on the way to Powell's for hay. And there is testimony to the effect that about a bale and a half was found in plaintiff's barn next morning. They testified, further, that they started a little after seven P. M., taking a path, about 400 or 500 feet northerly from the railroad, through a field, to the Powell road and thence southerly down that road to the crossing. And they testified that they did not go upon the tracks at all that night, but that they turned and ran back just as they reached the crossing, because a light was flashed in their faces, and that plaintiff was shot while he was running and when he was about 40 feet from the crossing. Three detectives in defendant's employ, including the one who shot plaintiff, and another person, not in its employ, testified that plaintiff and his companions were on defendant's tracks at a point some distance westerly from the crossing, where cars loaded with grain were stationed, and that they ran from that point to the crossing, when they were discovered, and thence northerly, followed by the one who shot, and that plaintiff was shot while running at a point about 50 feet northerly from the crossing. The seals of five cars had been broken and some grain was scattered on the ground. Clearly, the questions growing out of the shooting were for the jury. The bullet entered plaintiff's body in the back, a little to the right end of his spine. It passed through his intestines and lodged immediately under the skin in the front of his body. An operation was performed that night. The operating surgeon testified that he made an incision, five or six inches long, in the abdomen, and removed the bullet. Finding twenty perforations of the small intestines, he cut off the part where they were, about ten inches long, and resected the part. The operation left a scar about six inches long. Plaintiff is twenty-eight years old and was earning about twenty-four dollars per week before he was shot. He was in the hospital about three weeks. He lost about twenty-three pounds in weight. He did not return to work until June 4, 1918. He has been working ever since, but testified that he is unable to do what he did before. And he testified that eating is always followed by great discomfort and distress and that he is constipated all of the time. An X-ray expert testified that there is an obstruction or adhesion of some kind, which does not amount to a stoppage, but retards the circulation and creates a condition of intestinal stasis, similar to chronic constipation, that he should say that it is a permanent condition, and that a cathartic might relieve it temporarily, but that it will not get better without an operation. Another surgeon testified that he examined the plaintiff before the trial and found that he was suffering from an obstruction of the small intestine, located within eight or ten inches of the opening into the large one; that he had an operation scar, about an inch wide, lined at the top and at the bottom with long adhesions; that there is a thinning, a splitting of the tissue of the

abdominal wall, so that, where the wound is and for the space of an inch around it, there is nothing but a small layer of scar tissue between the abdominal cavity and the outside air; that his bowel is abnormally distended; that appearances showed definite evidence of muscular action to force the food through this obstruction, producing considerable pain; that there is a tendency to abdominal hernia in the scar, and that the condition is permanent. He testified, further, that cathartics may cause a narrowing of the intestines and, in this case, will certainly aggravate the condition. These witnesses testified for the plaintiff. Defendant did not produce any on this feature. Thus, the evidence as to plaintiff's condition was practically undisputed and this court should not interfere.